**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| GLENDA KAY CALLAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:08-CV-26 |
| HOPKINS COUNTY HOSPITAL DISTRICT d/b/a HOPKINS COUNTY MEMORIAL HOSPITAL and JASON HAWKINS, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The following are pending before the court:

1. Defendants' motion for summary judgment and brief in support thereof (docket entry #23);

2. Plaintiff's response to Defendants' motion for summary judgment (docket entry #25); and

3. Defendants' reply to Plaintiff's response to Defendants' motion for summary judgment and brief in support thereof and objections to affidavit of Kay Callan and attached exhibit (docket entry #31).

Having considered the Defendants' motion for summary judgment and the subsequent briefing thereto, the court is of the opinion that the Defendants' motion for summary judgment should be granted.

**OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE**

The Defendants filed objections to the summary judgment evidence. Having considered the objections, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment and evidentiary standards.

## BACKGROUND

The Plaintiff, a registered nurse, was employed by Defendant Hopkins County Memorial Hospital ("the Hospital"). The Plaintiff worked at the Hospital's emergency department. On January 20, 2007, the Plaintiff received a verbal warning for failing to appear for her scheduled shifts. The following day, January 21, 2007, the Plaintiff alleges that she was subjected to sexual harassment by a co-worker, Defendant Jason Hawkins ("Hawkins"). According to the Plaintiff, Hawkins approached the Plaintiff, placed his arms around the Plaintiff's neck and said, "Kay, let's go have sex." The Plaintiff declined. Later that same day, Hawkins inquired if the Plaintiff had changed her mind. The Plaintiff responded that she had not.

On January 27, 2007, during the Plaintiff's next scheduled shift, the Plaintiff claims that she was once again subjected to sexual harassment by Hawkins. According to the Plaintiff, Hawkins said to the Plaintiff, "You make me feel like this." While making this statement, Hawkins made a gesture with his arm depicting an erection. Later that same day, Hawkins walked behind the Plaintiff as she was seated, placed his hands on her shoulders, smelled her neck and, while touching her back with his body, said, "You make my pants stick out in front like a tent." Sometime later that day, Hawkins asked the Plaintiff if she needed a boyfriend. When the Plaintiff responded negatively, Hawkins stated that he needed a girlfriend because his wife was always asleep.

On January 27, 2007, the Plaintiff lodged a complaint against Hawkins with her supervisor, Director of Emergency Services Shonna Robison.[1] The Plaintiff subsequently complained verbally to Donna Rudzik, Director of Human Resources, on February 1, 2007. Thereafter, the Plaintiff filed a

---

[1] The Hospital states that the Plaintiff complained to Shonna Robison about the sexual harassment on January 29, 2007.

written complaint with Donna Rudzik on February 5, 2007.[2]

The Plaintiff was subsequently scheduled to work on February 9, 10 and 11, 2007. However, the Plaintiff became ill with a viral infection on February 8, 2007. After consulting with her physician, the Plaintiff received a doctor's note dated February 9, 2007.[3] The note released the Plaintiff to regular work duties on February 12, 2007. On February 9, 2007, the Plaintiff contacted House Supervisor Sherry Swindell to advise that she was unable to work her scheduled shift due to illness. On February 11, 2007, the Plaintiff contacted Shonna Robison to inform her that she would be returning to work on February 12, 2007. Shonna Robison explained to the Plaintiff that they would discuss her schedule the following morning. Thereafter, on February 12, 2007, Shonna Robison telephoned the Plaintiff to notify the Plaintiff that she could either resign her position or be terminated.[4] The Plaintiff chose the former. Accordingly, the Plaintiff's final day with the hospital was February 12, 2007.

The Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission. The parties did not provide the court with a copy of the Plaintiff's charge of discrimination. The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights on November 26, 2007. Thereafter, the Plaintiff filed her complaint, alleging hostile work environment sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, retaliation and assault and battery.

---

[2] The Defendants presented summary judgment evidence that the Hospital investigated the Plaintiff's claims of sexual harassment.

[3] The record is not clear regarding the date the Plaintiff actually saw her physician. The Plaintiff visited with her physician on either February 8, 2007 or February 9, 2007.

[4] The Hospital states that Shonna Robison did not issue the Plaintiff an ultimatum and that the Plaintiff voluntarily resigned her position.

## **LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

# DISCUSSION AND ANALYSIS

## SEXUAL HARASSMENT

The Defendants argue that the Plaintiff's hostile work environment sexual harassment claim must fail because the Plaintiff failed to raise a genuine issue of material fact with respect to the following:

(1)  that a term, condition, or privilege of the Plaintiff's employment was affected; and

(2)  that the Hospital failed to take prompt remedial action.

The court addresses these issues below.

### TERM, CONDITION OR PRIVILEGE OF EMPLOYMENT

**1.  APPLICABLE LAW**

"To establish a hostile work environment claim, [the Plaintiff] must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of [the Plaintiff's] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action."[5] *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005), citing *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). "'For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."'" *Id.*, quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (alteration in original)

---

[5] The Fifth Circuit "distinguishes between the *prima facie* case required for a harassment claim against a co-worker as opposed to a claim against a supervisor." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 n.4 (5th Cir. 2008). The court has applied the appropriate standard for a claim against a co-worker.

(quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

"In determining whether an environment is 'hostile' or 'abusive' within the meaning of Title VII, courts look at the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (citation omitted). The court may also consider whether the "complained of conduct undermines the plaintiff's workplace competence." *Id*. (citation omitted). "Simple teasing or isolated incidents, unless extremely serious, will not suffice." *Wilkinson v. Potter*, 236 Fed.Appx. 892, 893 (5th Cir. 2007), citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). "'To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.'" *Id*. (citation omitted).

2. **DISCUSSION**

Although case law varies depending upon the specific facts, this court is of the opinion that the Plaintiff's claims, taken as true, establish a genuine issue of material fact on the question of whether the alleged harassment created a hostile or abusive working environment. *See Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 875 (5th Cir. 1999). In *Shepherd*,

> the alleged harasser (1) made two inappropriate comments on two different occasions ("your elbows are the same color as your nipples" and "you have big thighs"); (2) attempted to look down the plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat."

*McKinnis v. Crescent Guardian, Inc.*, 189 Fed.Appx. 307, 310 (5th Cir. 2006), citing *Shepherd*, 168 F.3d at 872. The court in *Shepherd* concluded that based on the totality of the circumstances, Shepherd

did not demonstrate a genuine issue that the harassment created a hostile working environment. *Shepherd*, 168 F.3d at 875.

Conversely, in *Harvill*, the Fifth Circuit concluded that the plaintiff did establish an actionable hostile work environment claim. *Harvill*, *supra*. In *Harvill*,

> the alleged harasser (1) grabbed the plaintiff and kissed her on the cheek; (2) touched her breasts "numerous times"; (3) popped rubber bands at her breasts and patted her on the buttocks "numerous times"; and (4) once made comments about her sex life.

*McKinnis*, 189 Fed.Appx. at 310, citing *Harvill*, 433 F.3d at 435-36.

Hawkins' comments and actions were offensive and they were sufficiently severe and pervasive. *See Shepherd*, 168 F.3d at 874. The Plaintiff averred that she felt "pinned in" when Hawkins approached her from behind while seated which indicates that Hawkins' actions were physically threatening. *See id*. Further, the Plaintiff averred that she was humiliated by Hawkins' behavior. The court finds that the Plaintiff's allegations about Hawkins' actions create a genuine fact issue concerning whether they were threatening or humiliating and whether they undermined the Plaintiff's workplace competence. Additionally, a fact issue exists as to whether Hawkins' conduct, if true, would interfere unreasonably with a reasonable person's work performance. *See id*. Based on the totality of the circumstances, the Plaintiff has demonstrated a genuine issue of material fact from both a subjective and objective viewpoint that the harassment created a hostile or abusive working environment. *See id*. at 875. The Plaintiff has raised a genuine issue that the harassment affected a term, condition or privilege of employment. *See id*.

### PROMPT REMEDIAL ACTION

1. **APPLICABLE LAW**

"[A]n employee must take advantage of corrective opportunities provided by the employer."

*Harvill*, 433 F.3d at 437 (citation omitted). The Fifth Circuit has observed that determining "'[w]hether an employer's response to discriminatory conduct is sufficient "will necessarily depend on the particular facts of the case,"' such as the remedial steps taken and the severity of the harassment." *Id*. (citation omitted). "'When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability.'" *Id*. (citation omitted). "'Prompt remedial action must be reasonably calculated to end the harassment,' therefore, [the Hospital] may be held liable 'despite having taken remedial steps if [the Plaintiff] can establish that [the Hospital's] response was not reasonably calculated to halt the harassment.'" *Id*. (citation omitted).

## 2. DISCUSSION

The Hospital maintains the following policy regarding harassment:

### III. PROCEDURE

**Complaints:** An employee who feels he or she has been treated in a manner contrary to this policy should promptly report the incident to the supervisor or to Human Resources.

Supervisors must immediately report complaints of harassment to Human Resources.

**Investigation Of Complaint:** The supervisor and the representative from the Human Resources will make a prompt and thorough investigation of the matter in a professional and confidential manner. Because of the sensitivity of harassment issues, investigations should endeavor to protect the privacy of, and minimize suspicion toward, all parties concerned.

If a complaint is received or if the supervisor believes an unlawful harassing situation is occurring in the workplace, the supervisor should contact Human Resources department immediately.

The Human Resources department will provide guidance for investigation a complaint. With any complaint, the supervisor should listen to the employee and ask the employee to write down what happened. The written document will serve as a guide during the investigation process.

> The investigation may include interviews with the alleged harasser and anyone who may be aware of facts alleged to have occurred. Meetings with the employee or any individuals who provide information regarding the situation will be documented.
>
> A confidential file containing investigative documents will be maintained by Human Resources, with limited access.
>
> On completion of the investigation, a determination of the validity of the harassment allegations will be made. If harassment is found, prompt remedial action will be taken as warranted by the circumstances.

The Plaintiff took advantage of the Hospital's harassment policy by reporting the harassment to her supervisor on January 27, 2007 and to the director of human resources on February 1, 2007. In response to the Plaintiff's sexual harassment complaints, the director of human resources initiated an investigation on February 2, 2007 by taking a statement from Hawkins. Except for the arm gesture mentioned above, Hawkins denied the remainder of the Plaintiff's allegations of sexual harassment. Also on February 2, 2007, the director of human resources interviewed Andrea Thompson, an emergency department employee, who the Plaintiff suggested might have knowledge of the sexual harassment allegations. Ms. Thompson, however, stated that she had not witnessed any inappropriate behavior.

> On February 6, 2007, the director of human resources found as follows:
>
> After consideration of all statements, Human Resources finds that while the conduct from Mr. Hawkins was not entirely appropriate, did not meet the criteria for sexual harassment as required by law and Hospital policy. Human Resources recommends that Mr. Hawkins cease any physical contact, even in the form of joking, with his co-workers or any other Hospital employee and stop all forms of sexually related jokes or comments and pursue his role as Registered Nurse in a professional manner.
>
> Human Resources recommends that Ms. Robison, Emergency Department Director, take any and all measures to insure that this type of conduct does not happen again and create an environment conducive to staff development and completion of essential duties. Ms. Robison should educate the Emergency Department staff on policy covering harassment

within thirty (30) days of receipt of this recommendation. A Hospital sign in sheet should record all attendees to the staff education. Human Resources requests a written statement from the Director of Emergency Department at the end of the thirty (30) days addressing the completion of the requests. The office of Human Resources will be available for guidance if requested. It is also recommended that Ms. Robison continue the direct supervision of Ms. Callan, the complainant as long as she works in the department.

Thereafter, Shonna Robison engaged in staff development on workplace conduct.

In her deposition, the Plaintiff testified that although she was not aware of the outcome of the investigation concerning her allegations of sexual harassment, she was certain that the director of human resources conducted an investigation. The Plaintiff further testified that it was the policy of the Hospital to take complaints of sexual harassment seriously.

Based on the foregoing, the court concludes that once the Hospital was notified of the Plaintiff's complaints, the Hospital acted swiftly in taking remedial measures reasonably calculated to end the harassment. *See Harvill*, 433 F.3d at 439. The Plaintiff has not raised a genuine issue of fact on the prompt remedial action element of her *prima facie* hostile work environment claim. *See id*.[6]

## RETALIATION

1. APPLICABLE LAW

"Title VII prohibits retaliation against an employee who has engaged in activity protected by the

---

[6]The Plaintiff mistakenly argues that the Defendants are attempting to assert the *Ellerth/Faragher* affirmative defense to vicarious liability. To satisfy the *Ellerth/Faragher* affirmative defense, the employer must show by a preponderance of the evidence: "'(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Aryain*, 534 F.3d at 478 n.3. The Defendants herein, however, are merely asserting that the Plaintiff failed to offer summary judgment evidence regarding the fifth element of the Plaintiff's *prima facie* case against her co-worker, to wit: her employer knew or should have known of the harassment and failed to take prompt remedial action. The *Ellerth/Faragher* affirmative defense applies only in cases involving sexual harassment carried out by a supervisor. *Id*. Since the instant case involves co-worker sexual harassment, not supervisory sexual harassment, the *Ellerth/Farragher* affirmative defense is inapplicable. *Id*.

Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Beaumont v. Texas Department of Criminal Justice*, 468 F.Supp.2d 907, 922 (E.D. Tex. 2006). "Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination." *Fullen v. Galveston Independent School District*, 564 F.Supp.2d 719, 728 (S.D. Tex. 2008) (citation omitted). "Plaintiff may rely on either direct or circumstantial evidence, or both, to prove [her] claims." *Id*. (citations omitted). Here, it is undisputed that the Plaintiff is relying solely on circumstantial evidence of retaliation. As such, the court will apply the *McDonnell Douglas* burden-shifting standard. *See Arrieta v. Yellow Transportation, Inc.*, 2008 WL 5220569, *16 (N.D. Tex. 2008).

"The *McDonnell Douglas* burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a *prima facie* case." *Fullen*, 564 F.Supp.2d at 729 (citation omitted). "To establish a *prima facie* case of retaliation, a plaintiff must show:

(1) [she] engaged in statutorily protected activity under Title VII;

(2) action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and

(3) a causal connection exists between the protected activity and the adverse action."

*Beaumont*, 468 F.Supp.2d at 922 (citations omitted). "Once the plaintiff establishes a *prima facie* case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the actions at issue." *Fullen*, 564 F.Supp.2d at 729 (citation omitted). "If the defendant meets this burden of production, the presumption of

discrimination created by the plaintiff's *prima facie* case disappears, and the burden shifts to the plaintiff to produce evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination." *Id*. "A plaintiff meets this burden by producing evidence tending to show

(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or

(2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)."

*Fullen*, 564 F.Supp.2d at 729 (citations omitted).

Here, the Plaintiff has opted to proceed under the pretext alternative. "Under a pretext theory, to carry [her] ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred 'but for' the employee's participation in the protected activity." *Beaumont*, 468 F.Supp.2d at 922 (citations omitted).

### 2. *PRIMA FACIE* CASE

Here, the Plaintiff complained both verbally and in writing to her supervisor and to the director of human resources about the alleged sexual harassment. These complaints are clearly protected activity within the meaning of Title VII. *See Harvill*, 433 F.3d at 439.

Constructive discharge is the adverse employment action that is the basis for the Plaintiff's retaliation claim. *See id*. In order for the Plaintiff to establish a *prima facie* case of retaliation based on constructive discharge, the Plaintiff "'must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign."'" *Id*. at 439-40 (citations omitted). However, constructive discharge may also be established if the employer issued an ultimatum to the employee that she either resign or be terminated. *Jenkins v. State*

*of Louisiana*, 874 F.2d 992, 996 (5th Cir. 1989). Here, the Plaintiff alleges that her supervisor issued an ultimatum to her that she either resign or be terminated. Taking these facts in the light most favorable to the Plaintiff, the court finds that the Plaintiff has demonstrated that an adverse employment action occurred.

With respect to the third element, timing appears to provide the requisite causal link. "Although the third element of a *prima facie* case – causation – is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case stage is much less stringent." *Beaumont*, 468 F.Supp.2d at 924 (citations omitted). "A plaintiff need not prove that [her] protected activity was the sole factor in motivating the employer's challenged decision in order to establish the requisite causal link." *Id*. (citations omitted). "Rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity." *Id*. (citations omitted). "The consideration of three factors may be helpful in determining whether a causal link has been demonstrated at the *prima facie* case stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act." *Id*. (citations omitted). "'The timing of the adverse employment action can be a significant, although not necessarily determinative, factor.'" *Id*., quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) (remaining citation omitted). Close timing between an employee's protected activity and an adverse employment action may provide the requisite causal connection necessary to make out a *prima facie* case of retaliation. *Id*. at 924-25, quoting *Mayberry*, 55 F.3d at 1092 (remaining citations omitted). "The temporal proximity, however, must be 'very close.'" *Id*. at 925 (citation omitted).

Here, the Plaintiff's employment was terminated approximately 16 days after the Plaintiff complained of sexual harassment. The court finds that the close timing between the two events provides the requisite causal connection to establish a *prima facie* case of retaliation.

### 3. DEFENDANT'S REASON FOR TERMINATION

The Hospital maintains that the Plaintiff voluntarily resigned her employment. Alternatively, the Hospital contends that the Plaintiff violated the Hospital's attendance policy. Prior to the Plaintiff lodging her sexual harassment complaints, the Hospital issued a warning to the Plaintiff about her attendance. The Hospital maintains the following attendance policies:

**I.     POLICY STATEMENT:**

All employees are expected to report for work at his/her scheduled start time.

_____

**III.     PROCEDURE**

**Counseling:** An employee should be counseled if time and attendance standards are not being met. This could include a verbal or written counsel, probation or final warning letter. The supervisor may also choose to comment about the employee's attendance on the employee's performance appraisal.

**Definitions Of Occurrence And Tardy:** An occurrence is defined as any unscheduled absence from work. An employee's absence may be due to the employee's illness, illness of a child or any other reason. Generally, an occurrence is considered to include all the consecutively scheduled workdays an employee misses due to the same reason. For example, an employee who is absent for three (3) consecutive workdays due to a personal illness will generally be considered as having one (1) occurrence of absence.

**Departmental Standards:** HCMH's expectation is that employees will work every shift when scheduled and will arrive on time ready to work. Periodically employees will not be able to work as scheduled. The attendance standard is defined as having 3 occurrences of unscheduled absences in a 6 month period.

**Use Of Paid Time Off Hours For Unscheduled Absences:** If the employee is

> eligible to access PTO hours, the supervisor should generally charge unscheduled absences to one of these categories. The absence may still be counted as an occurrence in accordance with the department's attendance policy.

The Hospital contends that the Plaintiff missed her scheduled shifts due to illness on the following dates: September 11, 2006; September 18-19, 2006; November 7, 2006 and January 18, 2007.[7] Pursuant to the Hospital's attendance policy, the Plaintiff accrued at least four occurrences in a four month period which is in excess of the policy standard. The Hospital subsequently warned the Plaintiff about her excessive absences. After receiving the warning, the Plaintiff accrued another occurrence by missing her February 9-11, 2007 shift. The Hospital contends that if it terminated the Plaintiff, which it denies, then the Plaintiff was terminated for failing to abide by the Hospital's attendance policy. Based on the foregoing, the court finds that the Hospital presented competent summary judgment evidence of its legitimate, non-discriminatory reason for the Plaintiff's discharge.

**4.     PRETEXT**

In an effort to prove that her termination would not have occurred but for lodging her complaints of sexual harassment, the Plaintiff argues that the Hospital's reason for discharging her is a pretext for discrimination. The Plaintiff contends that she was eligible for paid leave and, as such, was entitled to take the time off from work. However, the Plaintiff's argument fails to address that portion of the policy which provides that a paid absence may still count as an occurrence.

The Plaintiff's argument falls short of meeting her ultimate burden of persuasion on the issue of intentional discrimination. These facts, taken in the light most favorable to the Plaintiff, do not present a genuine issue of material fact concerning the requisite "but for" causation. The Hospital, like

---

[7]The Hospital also presented evidence that the Plaintiff missed work on November 19, 2006 and December 2, 2006. The Hospital, however, did not provide the court with a reason for these absences. The Plaintiff does not dispute that she was absent from work during all six occurrences.

any employer, may terminate employees who are not able to follow an employer's attendance policies, as this is a legitimate, non-discriminatory reason for termination. The Plaintiff has failed to produce legally sufficient evidence that she would not have been terminated but for her complaints of sexual harassment.[8]

## CONCLUSION

Based on the foregoing, the court finds that the Defendants' motion for summary judgment (docket entry #23) is hereby **GRANTED**. The Plaintiff's hostile work environment sexual harassment claim and the Plaintiff's retaliation claim are **DISMISSED WITH PREJUDICE**.

The court declines to exercise supplemental jurisdiction over the remaining state law claims now that the federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). It is therefore ordered that the remaining state law claims of assault and battery are hereby **DISMISSED WITHOUT PREJUDICE** to the refiling of the same in the appropriate state court. *See Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("... if the federal claims are dismissed before trial, ... the state claims should be dismissed as well); *Reese v. Anderson*, 926 F.2d 494, 501 n. 9 (5th Cir. 1991) ("[s]uch dismissal is perhaps the practice in this circuit . . .).

**SIGNED this the 30th day of January, 2009.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[8]Any reliance by the Plaintiff on the timing of her discharge in relation to her complaints of sexual harassment would be unwarranted at this stage of the *McDonnell Douglas* burden-shifting analysis. "[E]vidence of temporal proximity between the protected act and the adverse employment action is alone insufficient to prove 'but for' causation." *Arrieta v. Yellow Transportation, Inc.*, 2008 WL 5220569, *17 (N.D. Tex. 2008), citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).